**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE INC | No. 2:23-mj-244-KFW |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A WARRANT**

I, Garrett Drew, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the Federal Bureau of Investigation and have been since March 1, 2020. I am currently assigned to the FBI's Portland, Maine Resident Agency. As part of my duties as an FBI Special Agent, I investigate criminal violations relating to international and domestic terrorism and other threats to national security and public safety. Prior to joining the FBI, I was a Special Agent with the United States Secret Service from 2015 to 2020. Among other assignments, I was detailed to the FBI Joint Terrorism Task Force as an investigator in the FBI New York Field Office. From 2009 until 2015, I was employed as a police officer in the state of New Hampshire.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses. I am working on this investigation with other Special Agents and Task Force Officers of FBI, and state and local law enforcement officers.

3. I submit this affidavit in support of an application for a search warrant for records of location information that is stored at premises controlled by Google, Inc.

4. Probable cause exists to believe that information stored at Google, Inc. will constitute or lead to evidence of offenses involving a Theft of Government Property, in

violation of Title 18, United States Code, Section 641 (the "Target Offense") as well as the identification of individuals who are engaged in the commission of these offenses.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the District Court of Maine is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY

6.      Based on my training and experience, I know that cellular devices, such as mobile telephone(s), are wireless devices that enable their users to send or receive wire and/or electronic communications using the networks provided by cellular service providers. Using cellular networks, users of many cellular devices can send and receive communications over the Internet.

7.      I also know, based on my training and experience, as well as conversations with other law enforcement officers with specialized training, that many devices, including but not limited to cellular devices, have the ability to connect to wireless Internet ("wi-fi") access points if the user enables wi-fi connectivity. These devices can, in such cases, enable their users to send or receive wire and/or electronic communications via the wi-fi network. A tablet such as an iPad is an example of a device that may not have cellular service but that could connect to the Internet via wi-fi. Wi-fi access points, such as those created through the use of a router and offered in places like homes, hotels, airports, and coffee shops, are identified by a service set identifier ("SSID") that functions as the name of the wi-fi network. In general, devices

with wi-fi capability routinely scan their environment to determine what wi-fi access points are within range and will display the names of networks within range under the device's wi-fi settings.

8. Based on my training and experience, I also know that many devices, including many cellular and mobile devices, feature Bluetooth functionality. Bluetooth allows for short-range wireless connections between devices, such as between a device such as a cellular phone or tablet and Bluetooth-enabled headphones. Bluetooth uses radio waves to allow the devices to exchange information. When Bluetooth is enabled, a device routinely scans its environment to identify Bluetooth devices, which emit beacons that can be detected by devices within the Bluetooth device's transmission range, to which it might connect.

9. Based on my training and experience, I also know that many cellular devices, such as mobile telephones, include global positioning system ("GPS") technology. Using this technology, the device can determine its precise geographical coordinates. If permitted by the user, this information is often used by apps installed on a device as part of the apps' operation.

10. Based on my training and experience, I know Google is a company that, among other things, offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Nearly every device using the Android operating system has an associated Google account, and users are prompted to add a Google account when they first turn on a new Android device.

11. In addition, based on my training and experience, I know that Google offers numerous apps and online-based services, including messaging and calling (e.g., Gmail, Hangouts, Duo, Voice), navigation (Maps), search engine (Google Search), and

file creation, storage, and sharing (e.g., Drive, Keep, Photos, and YouTube). Many of these services are accessible only to users who have signed into their Google accounts. An individual can obtain a Google account by registering with Google, and the account identifier typically is in the form of a Gmail address (e.g., example@gmail.com). Other services, such as Maps and YouTube, can be used with limited functionality without the user being signed into a Google account.

12. Based on my training and experience, I also know Google offers an Internet browser known as Chrome that can be used on both computers and mobile devices. A user has the ability to sign-in to a Google account while using Chrome, which allows the user's bookmarks, browsing history, and other settings to be uploaded to Google and then synced across the various devices on which the subscriber may use the Chrome browsing software, although Chrome can also be used without signing into a Google account. Chrome is not limited to mobile devices running the Android operating system and can also be installed and used on Apple devices and Windows computers, among others.

13. Based on my training and experience, as well as conversations with other law enforcement officers with specialized training, I know that, in the context of mobile devices, Google's cloud-based services can be accessed either via the device's Internet browser or via apps offered by Google that have been downloaded onto the device. Google apps exist for, and can be downloaded to, devices that do not run the Android operating system, such as Apple devices.

14. According to open-source materials published by Google, and my training and experience, I know that Google offers account holders a service called "Location History," which authorizes Google, when certain prerequisites are satisfied, to collect

and retain a record of the locations where Google calculated a device to be based on information transmitted to Google by the device. That Location History is stored on Google servers, and it is associated with the Google account that is associated with the device. Each accountholder may view their Location History and may delete all or part of it at any time.

15. Based on my training and experience, I know that the location information collected by Google and stored within an account's Location History is derived from sources including GPS data and information about the wi-fi access points and Bluetooth beacons within range of the device. Google uses this information to calculate the device's estimated latitude and longitude, which varies in its accuracy depending on the source of the data. Google records the margin of error for its calculation as to the location of a device as a meter radius, referred to by Google as a "maps display radius," for each latitude and longitude point.

16. Based on open-source materials published by Google and my training and experience, I know that Location History is not turned on by default. A Google accountholder must opt-in to Location History and must enable location reporting with respect to each specific device and application on which they use their Google account in order for that usage to be recorded in Location History. A Google accountholder can also prevent additional Location History records from being created at any time by turning off the Location History setting for their Google account or by disabling location reporting for a particular device or Google application. When Location History is enabled, however, Google collects and retains location data for each device with Location Services enabled, associates it with the relevant Google account, and then uses this information for various purposes, including to tailor search results based on the

5

user's location, to determine the user's location when Google Maps is used, and to provide location-based advertising. As noted above, the Google accountholder also has the ability to view and, if desired, delete some or all Location History entries at any time by logging into their Google account or by enabling auto-deletion of their Location History records older than a set number of months.

17. Location data, such as the location data in the possession of Google in the form of its users' Location Histories, can assist in a criminal investigation in various ways. As relevant here, I know based on my training, experience and through conversations with other law enforcement officers, that Google has the ability to determine, based on location data collected and retained via the use of Google products as described above, devices that were likely in a particular geographic area during a particular time frame and to determine which Google account(s) those devices are associated with. Among other things, this information can indicate that a Google accountholder was near a given location at a time relevant to the criminal investigation by showing that his/her device reported being there.

18. Based on my training and experience, I know that when individuals register with Google for an account, Google asks subscribers to provide certain personal identifying information. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know

that even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

19. Based on my training and experience as well as conversations with other law enforcement officers with specialized training, I also know that Google typically retains and can provide certain transactional information about the creation and use of each account on its system. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, Google often has records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

## FACTS SUPPORTING PROBABLE CAUSE

**Between 4:00 a.m. on June 14th, 2023, and 4:00 p.m. on June 19th, 2023, Theft of Government Property, Bowdoin, Maine**

20. Between 4:00 a.m. on June 14, 2023 and 4:00 p.m. on June 19, 2023, a residential burglary occurred at 1459 Augusta Road, Bowdoin, Maine 04287. During said burglary numerous pieces of United States Government Property, specifically belonging to The United States Customs and Border Patrol, were stolen. The residence is single family home located in a rural area of Maine.

7

21. On June 19, 2023, at 4:19 p.m., Sagadahoc County Patrol Corporal Ian Alexander was asked by Sagadahoc Emergency Communications to respond to 1459 Augusta Road in the Town of Bowdoin for the report of a residential burglary. Upon Corporal Alexander's arrival he met with the complainants, Person 1. and Person 1's wife, Person 2. Person 1 and 2 explained to Corporal Alexander they had departed the residence on Wednesday, June 14, 2023, to travel to Tennessee to visit family. They departed the Bowdoin residence at approximately 4:00 a.m.. Persons 1 and 2 returned to the residence at approximately 4:00 p.m. the afternoon of June 19, 2023, and upon entering the home, discovered items strewn about and items missing. Persons 1 and 2 exited the home to call 911 and await the arrival of local police.

22. Upon Corporal Alexander's arrival, he was shown into the home where it was discovered a large amount of property was stolen. Person 1 and 2 walked through the home with Corporal Alexander to determine what was missing. Person 1 is a U.S. Border Patrol Agent temporarily stationed in the Portland, Maine office awaiting reassignment to either the Rangely, Maine or Jackman, Maine office. Person 2 is a State Trooper for the Texas Department of Public Safety. Persons 1 and 2 relocated to Maine from Texas in April of 2023.

23. Person 1determined that in addition to a large amount of cash and jewelry, also taken during the burglary was his Government- issued U.S. Border Patrol duty weapon, duty gear to include: ballistic vest, handcuffs, flashlight, portable radio, Government-issued laptop computer, Samsung cell phone, U.S. Border Patrol badges, and U.S. Border Patrol credentials. Two other personally owned handguns were missing, as well as approximately 600 rounds of 9-millimeter parabellum ammunition.

24. At approximately 5:46 p.m., Detective Sargent Adam Temple of the Sagadahoc County, Maine Sheriff's Department arrived to assist with the investigation. Det. Temple began to process the crime scene with the assistance of other deputies. Det. Temple acquired a list and description of the items stolen from the home from Person 1. Of note the following pieces of United States Government Property were stolen: Border Patrol Harris portable radio with microphone, Glock model 47 US Border Patrol (USCBP) duty pistol with TLR-1 mounted light (Serial Number DHS108153), Border Patrol body armor plate carrier with Hesco brand plates (Serial Numbers 23959 & 29747), USCBP duty belt including 2 pistol magazines, an ASP baton, flashlight, Handcuff pouch with Smith and Wesson brand handcuffs, USCBP credentials belonging to Robert Eger Jr. (ID#: 133950), USCBP Badges (Serial Numbers: BPM43855 & BPM43856), Speer LE USCBP issued 9mm parabellum ammunition in a white box imprinted with "US Department of Homeland Security – Not for Resale, Dynamic Research Technologies Highly Accurate penetrating Frangible", Government issued Android Galaxy S20 cell phone (Serial Number: RFCR81D5JRX, IMEI 358122561149618), and Government-issued HP Pro Book 640 G7 laptop computer (Serial Number: 2TK0510DZV).

25. Det. Temple was advised by Person 1 that when he and Person 2 departed the residence on June 14th, he had mistakenly left the cable down at the entrance to the driveway allowing access to the home via the driveway. Person 1 had a family friend put it back up later that morning which restricted access down the driveway to the home the remainder of their time away. The cable would be taken down briefly a few times during their time away by the same family friend while he worked on a piece of machinery owned by Persons 1 and 2, but the cable would be put back up upon his departure. The

9

cable was up, blocking access to the driveway upon Persons' 1 and 2 return to the residence on June 19th.

26. A perimeter check of the home was conducted and no footprints or anything of evidentiary value was located. The home's back yard abuts a nearby stream and according to Person 1 there are multiple snowmobile/ATV trails not far behind the home. On June 20th, Det. Temple traveled the trail system using an ATV but did not locate any evidence the trails were utilized for the burglary.

On June 28, 2023 Det. Temple utilized NESPIN Pawn Database in an attempt to locate, by description, any of the property stolen from the residence. Det. Temple located six pieces of jewelry, pawned by Michael J. Hall at the St. John Street, Portland, Maine Coastal Trading Post on June 20, 2023. Photos were obtained of the pawned jewelry and showed to Person 1, who positively identified a gold ring inscribed "DAD", a gold ring with four inset diamonds, an earring stud, and silver religious cross as belonging to his deceased parents.

28. Det. Temple began an investigation into Michael J. Hall and learned he is currently on four sets of Maine State bail conditions to include but not limited to: random search of person, vehicle and residence, no new criminal conduct, no possession of firearms or dangerous weapons. Michael J. Hall's bail conditions listed an address of 200 Doughty Road, Bowdoin, Maine. It was also determined Michael J. Hall is in a relationship with Jeanne I. Doughty who shares the same address of 200 Doughty Road, Bowdoin, Maine. A property search through Sagadahoc County Deeds determined the property at 200 Doughty Road, Bowdoin, Maine is owned by Harold Doughty and Charlene Doughty. It is approximately two miles from 200 Doughty Road to the burglarized residence.

Det. Temple had unmarked units check the 200 Doughty Road address with no contact.  A BOLO (be on the lookout) was put out for law enforcement agencies in an attempt to locate a black, 2015 Volkswagen Jetta (Maine P/C 6932VW),known to be operated by Jeanne I. Doughty and Michael J. Hall.

29. At approximately 5:30am on June 29, 2023, Det. Temple was notified by Topsham Police Officer Courtney Everstone as well as Sagadahoc County Lieutenant Brian Quinn that the aforementioned Volkswagen was currently at the 200 Doughty Road, Bowdoin residence.

30. Due to only a small percentage of stolen items being pawned and no evidence to show other items were sold elsewhere, Det. Temple believed the remaining stolen items were in the possession of Michael J. Hall and or Jeanne I. Doughty at 200 Doughty Road, Bowdoin, Maine. Det. Temple knew through experience and training that stolen property such as this can be hidden in small areas including but not limited to: vehicles, sheds, outbuildings or on a person. Based on this information, Det. Temple requested a search warrant for the property at 200 Doughty Road, Bowdoin, Maine, vehicle registered to Doughty, and the persons of Hall and Doughty. The warrant was granted by Maine 6th District Court Judge Hon. Barbara Raimondi and executed on June 29, 2023.

31. Prior to the execution of the search warrant Det. Temple called FBI Special Agent Dale Wengler to advise him of the stolen United States Government Property and the results of the investigation to that point. SA Wengler advised Supervisory Special

Agent Christopher Peavey of the information he received and got approval to assist in the investigation of the stolen US Government property.

32. On June 29, 2023, SA Wengler called SA Garrett Drew (Your Affiant) and USCBP FBI Task Force Officer Jonathan Duquette to advise them of the situation. Both were requested to head to Bowdoin, Maine and offer any assistance with the local police search warrant.

33. On June 29, 2023, the search warrant was executed at 200 Doughty Road, Bowdoin, Maine by Sagadahoc County, Maine Sheriff's Deputies. the car belonging to Jeanne Doughty and the persons of Doughty and Hall was also searched. The following items stolen from 1459 Augusta Road, Bowdoin, Maine 04287 were recovered during the search:

1) Red Dell laptop - when powered on this laptop displayed the name "Person 1". The battery died seconds after displaying this.

2) Gold men's ring with (4) diamonds - located on the hand of Michael Hall.

3) Suspected crystal methamphetamine - located on the nightstand

4) Suspected heroin - located on the bed sheet

5) Tactical body armor attachments - green in color

6) Blackhawk holster - located in a laundry basket

7) Tactical body armor green in color - containing Hesco brand plates - serial numbers: 23959 & 29747

8) Soft military style soft canteen

9) Tactical groin plate carrier

10) Black jewelry box with charm bracelet inside among other pieces of jewelry

11) Border Patrol Badge - Serial Number: BPM43856

12) Clear plastic bin with green lid - containing miscellaneous items to include two key fobs for a Ford Edge vehicle and a Ford F-250 key, all of which were stolen from the Augusta Road residence.

13) Containing miscellaneous items to include: Premier brand LEO knife with Department of Public Safety Texas Highway Patrol insignia, Smith and Wesson handcuffs, cork pouch containing a gold ring with a black center stone surrounded by diamonds with "Daimler Chrysler Gold Award", 1935 Buffalo Nickel, three bullets: 1 9mm Luger AAC - 1 9mm Blazer - 1 Speer 9mm Luger.

14) iPhone belonging to Michael Hall which was found on the bed in the bedroom

15) ASP baton located on the floor next to the bed

16) Flower print cardboard box containing fake I.D.s and fake Maine State Inspection Stickers

17) Red box containing many silver dollars

18) Green shoulder bag containing evidence of manufacturing fake I.D.s

19) Blue cloth bag with stars on it containing foreign coins

20) Clear plastic bag of jewelry

21) Tan Glock model 19 with Sig Sauer TLR-7 mounted gun light

22) Fictitious Cape Ann Lobsterman business checks

23) Pink Coach brand purse and iPhone belonging to Jeanne Doughty - seized from Jeanne Doughty's VW Jetta after her arrest

      34.     Of the listed items that were seized, the green tactical body armor attachments, Blackhawk holster, tactical body armor green in color - containing Hesco brand plates – serial numbers: 23959 & 29747, soft military style soft canteen, tactical groin armor plate carrier, US Border Patrol Badge - Serial Number: BPM43856, Smith and Wesson handcuffs, 1 round of DHS Speer 9mm Luger ammunition, ASP baton, and a TLR weapon mounted light, are known or presumed to be stolen United States Government property from 1459 Augusta Road, Bowdoin, Maine 04287.

35. While the search warrant was taking place, Michael Hall was provided his Miranda warnings and spoke to FBI Agent SA Drew and FBI Task Force Officer Duquette. Hall denied taking the recovered stolen items and said he received the items from an individual only known as "T". Hall had traded illegal drugs to "T" for the items. Hall could not provide any specific information about "T" and did not have any contact information for him on his cell phone despite saying he regularly used it to communicate with "T". Hall said he believed the items to be stolen and often traded "T" illegal drugs for "boosted" or stolen goods. Hall denied having anything to do with the actual burglary and denied any knowledge of the stolen firearms initially before saying he has seen one of them in "T"'s car. Hall said he knew he was a convicted felon and did not "mess with" firearms or ammunition because it would result in a long prison sentence.

36. During the course of the interview, Hall asked for his cell phone which had been located in his bedroom. Hall was provided an iPhone which he said was his. This phone was eventually seized by Sagadahoc County, Maine Sheriff's as evidence during the course of the search. At the conclusion of the search, Hall was arrested by the Sagadahoc County, Maine Sheriff's Office.

37. On July 7, 2023, Persons 1 and 2 met with Sagadahoc County, Maine Sheriff's Det. Temple. They were able to positively identify the following US Government Property as being stolen from 1459 Augusta Road, Bowdoin, Maine 04287:

38. Blackhawk pistol holster, green body armor vest and serialized Hesco armor plates, US Customs and Border Patrol Badge, Smith & Wesson Handcuffs, Speer 9mm parabellum DHS round of ammunition, ASP baton, and Streamlight TLR-1 weapon mounted light.

39.     Persons 1 and 2 also identified several other personal and family items that had been stolen and subsequently recovered by local Sheriff's during the search warrant.

### Need for the Requested Information

40.     The requested warrant will allow investigators to identify devices that were in the vicinity of the 1459 Augusta Road, Bowdoin, Maine 04287 at the time of the burglary between 4:00 a.m. on June 14, 2023 and 4:00 p.m. on June 19, 2023, in the vicinity of the location in where the crime occurred.  Information from Google will aid investigators in identifying devices that where in the area during this time.  This evidence will aid law enforcement in its investigation of those suspected to be involved.

41.     Based on the foregoing, I submit that there is probable cause to search information that is currently in the possession of Google and that relates to the devices that reported being within the Target Location described in Attachment A during the time period described in Attachment A for evidence of the crime(s) under investigation.  The information to be searched includes (1) identifiers of each device; (2) the location(s) reported by each device to Google and the associated timestamp; and (3) basic subscriber information for the Google account(s) associated with each device.

42.     The proposed warrant sets forth a multi-step process whereby the government will obtain the information described above.  Specifically, as described in Attachment B.I:

>    a. Using Location History data, Google will identify those devices that it calculated were or could have been (based on the associated margin of error for the estimated latitude/longitude point) within the Target Locations described in Attachment A during the time period described

in Attachment A.  For each device, Google will provide a unique device ID assigned by Google, and its location coordinates along with the associated timestamp(s), margin(s) of error for the coordinates (*i.e.,* "maps display radius"), and source(s) from which the location data was derived (*e.g.*, GPS, wi-fi, bluetooth), if available.  Google will not, in this step, provide the Google account identifiers (*e.g.,* example@gmail.com) associated with the devices or basic subscriber information for those accounts to the government.

b.  The government will identify to Google the devices appearing on the list produced in step 1 for which it seeks the Google account identifier and basic subscriber information.  The government may, at its discretion, identify a subset of the devices.

c.  Google will then disclose to the government the Google account identifier associated with the devices identified by the government, along with basic subscriber information for those accounts.

43.     This process furthers efficiency and privacy by allowing for the possibility that the government, upon reviewing contextual information for all devices identified by Google, may be able to determine that one or more devices associated with a Google account (and the associated basic subscriber information) are likely to be of heightened evidentiary value and warrant further investigation before the records of other accounts in use in the area are disclosed to the government.

## CONCLUSION

44. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c).

45. I further request that the Court direct Google to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Garrett Drew
Special Agent
Federal Bureau of Investigation

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date: Aug 25 2023

City and state: Portland, Maine

Karen Frink Wolf, U.S. Magistrate Judge
Printed name and title